IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:18-CR-9 |
| v. | ) | |
| | ) | Honorable Claude M. Hilton |
| RAHEEM OLIVER, | ) | |
| | ) | Sentencing:  August 17, 2018 |
| Defendant. | ) | |

## UNITED STATES' POSITION ON SENTENCING

The United States of America, through its attorneys, G. Zachary Terwilliger, United States Attorney, and Samantha P. Bateman, Assistant United States Attorney, and in accord with 18 U.S.C. § 3553(a) and the United States Sentencing Commission Guidelines Manual ("Guidelines" or "U.S.S.G."), hereby files its position with respect to sentencing in the instant case.  Given the nature and seriousness of the defendant's offense, which involved preying on hundreds of elderly victims, and his extensive and often violent criminal history, the United States respectfully recommends that the Court sentence the defendant to a term of imprisonment of 235 months, followed by a three-year term of supervised release.  The United States also requests that the Court enter agreed forfeiture and restitution orders in the amount of $640,594.70, reflecting the significant losses that Oliver caused his victims.

## I.      Factual Background

Alexandria resident Norman T. Hatch was an American hero.  As a Marine Corps combat cinematographer, he risked his life to capture some of the most iconic footage of the Battles of Iwo Jima and Tarawa.  That footage helped the documentary "With the Marines at Tarawa" win the 1945 Academy Award for Most Outstanding Documentary Short Film.  The story of Hatch's experiences in World War II was later turned into a book entitled "War Shots: Norm Hatch and

the U.S. Marine Corps Combat Cameramen of World War II."  After his military service, Hatch worked as a civilian audiovisual adviser for the Pentagon and a consultant to the White House press office and to Congress, and later opened his own company.   When he passed away last year at the age of 96, he was laid to rest at Arlington National Cemetery.[1]

Toward the end of his long and remarkable life, Norm Hatch deserved the very best this country had to offer.  Instead, several years before his death, he had the misfortune to be targeted and victimized by the defendant, Raheem Oliver.  Oliver is a multiple-time convicted felon who most recently served approximately six years on armed robbery and kidnapping convictions in Arizona.  His criminal record also includes convictions for domestic assault and narcotics offenses. But after his release from prison in 2010, the defendant appears to have turned to fraud scams.

The defendant first targeted Hatch for this particular fraud scheme by contacting him and offering to renew one of his magazine subscriptions.  Thereafter, for a period of over a year, the defendant repeatedly called and harassed Hatch, falsely claiming that Hatch owed him or his fraudulent companies (e.g., "National Publishers Magazine," "Platinum Reader Magazine," and "Readerselection.com") money for almost 200 magazine subscriptions that Hatch had never ordered.  Oliver also threatened him that if he did not pay, he would be taken to court.  On the basis of those threats, the defendant convinced Hatch to send over $98,000 of his life savings in the form of personal checks to Oliver and his fiancée and associates in Arizona.  *See* Presentence Investigation Report ("PSR") at ¶¶ 16-18, 48-51.

---

[1] *See Norman T. Hatch, Who Filmed Grisly World War II Combat, Dies at 96*, New York Times, *available at* https://www.nytimes.com/2017/04/28/us/norman-hatch-dead-filmed-war-in-the-pacific.html.

Unfortunately, what happened to Mr. Hatch was also not an anomaly.  Far from it.  Rather, it was part of a broad and calculated magazine fraud scam in which Oliver and others working under his direction would use telemarketing leads to contact magazine subscribers and offer them assistance with their subscription renewals.  Instead of actually renewing the subscriptions, however, Oliver would double-charge victims for their subscriptions, make other unauthorized charges on their accounts, and even fraudulently bill them for magazines that they never ordered and never received.  *See id.* at ¶¶ 15, 35-41.  Throughout this process, Oliver identified individuals who were particularly susceptible to being defrauded, primarily including elderly individuals.  He would then contact them by phone to falsely claim that they owed additional payments for past-due balances, attorneys' fees, and court costs.  Oliver often threatened these victims with arrest, criminal charges, and other legal action if they did not pay promptly.  *Id.* at ¶ 42.  And he used sophisticated tools, including call spoofing technology, to impersonate government officials and to make his phone calls appear as though they were coming from local courthouses near where his victims lived.  *Id.* at ¶ 43.

Through this extensive fraud scheme, the defendant succeeded in stealing $640,594.70 from at least 354 victims over a period of approximately three years.  *Id.* at ¶ 61.  He used the stolen funds for his own personal benefit, including to pay the rent on a large home in Arizona, as well as to benefit his co-conspirators, family members, and other associates.

## II.   Guidelines Calculations

As the Court is well aware, although the Guidelines are advisory, sentencing courts "must consult those Guidelines and take them into account when sentencing."  *United States v. Booker*, 543 U.S. 220, 261 (2005).  Thus, at sentencing a court "must first calculate the Guidelines range"

3

applicable to the defendant. *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see also Gall v. United States*, 552 U.S. 38, 49-50 (2007).

Here, with one minor caveat relating to the loss amount as noted below, the government agrees with the U.S. Probation Office that the calculation of the appropriate Guidelines for defendant Oliver is as follows:

| | |
|---|---|
| Base Offense Level (§ 2B1.1) | 7 |

Enhancements:

| | |
|---|---|
| Actual or intended losses between $550,000 and $1,500,000 (§ 2B1.1(b)(1)(H)) | +14[2] |
| Offense involved 10 or more victims or mass marketing (§ 2B1.1(b)(2)(A)) | +2 |
| Offense involved a misrepresentation that the defendant was acting on behalf of a government agency (§ 2B1.1(b)(9)(A)) | +2 |
| Sophisticated means (§ 2B1.1(b)(10)(C)) | +2 |
| Vulnerable victims (§ 3A1.1(b)(1)) | +2 |
| Large number of vulnerable victims (§ 3A1.1(b)(2)) | +2 |
| Aggravating Role (§ 3B1.1(a)) | +4 |

This results in a Total Offense Level of 35. The defendant's significant criminal history places him in Criminal History Category IV. Accordingly, the resulting advisory Guidelines range

---

[2] The agreed loss amount in the plea agreement was between $250,000 and $550,000, which represented the amount of identifiable victim losses at the time that the defendant signed his plea agreement. Since then, however, additional victims have come forward and been identified, and the total losses have increased to well over $550,000. Consistent with the plea agreement, the United States submits that the Court should apply the lower loss amount under U.S.S.G. § 2B1.1(b)(1)(G) (*i.e.* 12 levels rather than 14 levels), which would reduce the Guidelines calculation by 2 levels from the calculation outlined in the PSR and would result in an advisory Guidelines range of 188 to 235 months. However, the issue is largely an academic one because the government is recommending a sentence for Oliver that is within the advisory Guidelines range either way.

outlined in the PSR is 235 to 293 months of imprisonment, but the range is capped at the upper end by the statutory maximum under 18 U.S.C. § 1349 of 240 months of imprisonment.

### III.    Section 3553(a) Factors

As the Court is also well aware, after calculating the applicable Guidelines range, a sentencing court must then consider that range, as well as the sentencing factors set forth in § 3553(a), and determine a sentence that is appropriate and reasonable for the individual defendant. *Nelson*, 555 U.S. at 351; *see also United States v. Hughes*, 401 F.3d 540, 546 (4th Cir. 2005).  With respect to 18 U.S.C. § 3553(a)'s enumerated factors, of particular relevance here are the "nature and circumstances of the offense," the need for the sentence "to reflect the seriousness of the offense" and provide "just punishment," "the history and characteristics of the defendant," the need "to promote respect for the law," and the need for the sentence "to afford adequate deterrence to criminal conduct." § 3553(a)(1), (a)(2)(A), (a)(2)(B), (a)(6), (a)(7).

As explained below, based on all those factors, a sentence of imprisonment of 235 months is justified, appropriate, and reasonable in this case.

### A.    *A sentence of 235 months is necessary based on the deplorable nature and circumstances of this offense.*

By any measure, the defendant's criminal conduct was quite serious and was motivated by greed.  The defendant deliberately targeted elderly victims, often with diminished mental capacity and physical health, and preyed upon them in order to unjustly enrich himself.  He repeatedly and shamelessly lied to his victims, and he employed calculated and sophisticated tactics to mask his true identity and conceal his crimes.  Most importantly, as the victim impact statements make clear, the defendant not only stole thousands of dollars from his individual victims (totaling hundreds of

thousands of dollars overall), but his conduct also inflicted serious emotional harms on the elderly victims and their family members.

Moreover, the defendant's conduct did not represent a one-time lapse in judgment, but rather a sustained pattern of deception over a period of multiple years.  And at no point did the defendant ever appear to stop and think about the pain he was causing through his lies and false threats.  Rather, it appears that the defendant would have continued his scam even longer had law enforcement not eventually intervened to stop him.

B.     *A significant sentence of 235 months is also necessary in light of the defendant's personal history and characteristics and to deter him from future crimes.*

The defendant's personal history, including his quite serious criminal record, also warrants a significant term of incarceration.  The defendant has an extensive criminal history, including convictions for domestic assault, passing bad checks, and possession of narcotic drugs for sale. *See* PSR at ¶¶ 82-83.  His most serious convictions were for armed robbery and kidnapping and arose from a jewelry store heist during which the defendant and his co-conspirators robbed the store by holding a store employee at gunpoint and binding her wrists, ankles, and eyes with duct tape. *Id.* at ¶ 84.

The defendant served approximately six years in prison for those convictions, but those years behind bars were apparently not nearly enough to deter him from further crimes.  Instead, the defendant appears to have simply switched his *modus operandi* from violent offenses to fraud. Notably, the defendant actually committed the instant offense while on probation for his conviction for issuing bad checks, after having been found in violation of the terms of his probation on at least one occasion.  *Id.* at ¶ 86.  He is also currently under investigation in California for unrelated

conduct involving extortion, an offense that he appears to have committed roughly contemporaneously with the instant fraud scam. *Id.* at ¶ 86.

Moreover, the defendant actually fled from prosecution after he was made aware that he was under investigation for the jewelry store robbery, commenting to an association that "I've got to get out of town." *Id.* at ¶ 84. He also previously failed to appear on forgery charges in Arizona in 2003, and a bench warrant had to be issued for his arrest. *Id.* at ¶ 91. Taken together, this conduct reflects a disturbing lack of respect for the law and warrants a significant punishment in this case so that the defendant will finally get the message that victimizing others through his criminal behavior will not be tolerated.

    C.    *A substantial term of incarceration is necessary to promote respect for the law and afford adequate general deterrence of similarly ruthless schemes.*

Last but not least, the need for general deterrence also warrants the imposition of a significant term of incarceration in this case. General deterrence is important in any case, but it is particularly important with respect to fraud scams like this one, in which defendants prey on elderly and vulnerable individuals. Crimes such as this one are highly appealing, as they can yield significant financial benefits for their perpetrators. They are also often very difficult to detect and prosecute, because defendants like Oliver hide behind fake identities and aliases and use sophisticated technology in an attempt to avoid detection. A meaningful sentence of 235 months of incarceration would send a strong message to help deter other would-be scammers from committing similarly destructive crimes.

## IV.    Forfeiture and Restitution

The United States also respectfully requests that the Court impose forfeiture and restitution obligations on the defendant in the amount of $640,594.70, representing the total amount that

Oliver stole from his victims. The defendant, through counsel, has represented that he agrees to the entry of these orders, and copies of the proposed forfeiture and restitution orders are attached as Exhibit 1 and Exhibit 2 to this filing, respectively.[3] The parties will present executed copies of the orders to the Court during the sentencing hearing.

## V.    Conclusion

For the foregoing reasons, the government respectfully requests that this Court sentence the defendant to a term of imprisonment of 235 months, a three-year term of supervised release, and forfeiture and restitution in the amount of $640,594.70. Such a sentence would be sufficient, and not greater than necessary, to satisfy the factors set forth in 18 U.S.C. § 3553(a).

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:    _____/s/_____
Samantha Bateman
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3700
Fax: (703) 299-3980
Email: Samantha.Bateman@usdoj.gov

---

[3] The attached restitution order contains a redacted attachment that omits the full names and addresses of the individual victims. An un-redacted version of the attachment will be handed to the Court at sentencing, for filing under seal.

8

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 10, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record in this case.

G. Zachary Terwilliger
United States Attorney


By:      _____/s/_____
Samantha Bateman
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3700
Fax: (703) 299-3980
Email: Samantha.Bateman@usdoj.gov